# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE RICHARD SENATOR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEFF MACOMBER, et al.,<br><br>　　　　　Defendants. | Case No.  1:24-cv-00439-SAB<br><br>ORDER SCREENING COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY-DAY DEADLINE** |

Bruce Richard Senator ("Plaintiff"), a former prisoner proceeding *pro se* and *in forma pauperis*, initiated this action against (1) Jeff Macomber, the secretary of CDCR; (2) Matthew McVay, former warden of VSP; and (3) the California Department of Corrections and Rehabilitation ("CDCR") on April 12, 2024. (ECF No. 1.) Plaintiff's complaint is currently before the Court for screening.

## I.

## SCREENING REQUIREMENT

Because Plaintiff is proceeding in forma pauperis, the Court may dismiss a case at any time if the Court determines the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners);

Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) ("[W]here the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and … afford the petitioner the benefit of any doubt" (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)).). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability … 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Id. Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff alleges he is a disabled individual with chronic medical conditions, including disequilibrium and nerve damage. (Compl. 14.) Plaintiff attaches medical records from institutional encounters in 2021 and 2023 which state Plaintiff has a disability related to mobility and requires a wheelchair lift to access transport vehicles. (Compl. 24, 27.)

During Plaintiff's incarceration at California Substance Abuse Treatment Facility ("CASATF") in Kings County from January 2020 to April 2022, and Valley State Prison ("VSP") in Madera County from April 2022 to April 12, 2023, Plaintiff sought to conduct a citizen's arrest upon CDCR and California Correctional Health Care Services ("CCHCS") officials for crimes committed in violation of state or federal law. (Id.) As a result, Plaintiff alleges CDCR officials at CASATF attempted to have Plaintiff murdered twice in 2021. (Id.)

On November 15, 2022 and in advance of Plaintiff's release from prison, CDCR Parole Services officers at VSP initiated a Release Program Study ("RPS") which was forwarded to Orange County Probation Department officials, along with copies of Plaintiff's CDCR medical documents. (Compl. 11-12.) The RPS notates "Physical Limitations: Transport Vehicle with Lift." (Compl. 11, 20.) Plaintiff's medical documentation noted "Transport Vehicle with Lift" and that Plaintiff "[n]eeds a wheelchair lift to access transport vehicles." (Compl. 12.)

Plaintiff alleges he also "filed with McVay" requests including a CDCR-602 Grievance; a CDCR-1824 Reasonable Accommodation Request; additional medical disability documents regarding a "Transport Vehicle with Lift"; and an "outline of injuries and conditions" to ensure CDCR provided a transport vehicle with a lift upon Plaintiff's release. (Id.)

On April 12, 2023, Plaintiff was released from custody. VSP CDCR personnel drove Plaintiff to the Amtrak station located at 18770 Road 26 in Madera, CA (Id.) Plaintiff alleges McVay and other fictitious defendants withheld his California identification card; gave Plaintiff a JPay debit card with $200 in release funds but placed a "block" on the card without informing Plaintiff; and provided no reasonable accommodation transport vehicle with lift upon release. (Id.) Plaintiff therefore tied three boxes of his personal property to his rollator with his shoelaces and walked for ten hours from the Amtrak Station to the City of Madera Police Department, located at 330 South C Street in Madera, California. (Compl. 13.) Madera Police contacted McVay, fictitious

1  defendants, and two Orange County probation officials; however, each refused to provide
2  transportation or relief of any sort. (Id.)

3  From April 12, 2023 to April 19, 2023, Plaintiff alleges he was forced to live on the street
4  without funds, food, or a cell phone. (Id.) Plaintiff alleges VSP specifically requested that Madera
5  Police ask Plaintiff to sleep at night on the street rather than inside an entryway alcove, "as VSP
6  officials were arranging a drive-by shooting, another murder attempt." (Id. at 14-15.) Plaintiff
7  alleges he has since learned the reason Plaintiff was left at the Amtrak station without ID, funds, or
8  transportation was to facilitate another murder attempt. (Id. at 15.) Plaintiff alleges his life was
9  placed in jeopardy and his pre-existing medical conditions were exacerbated as a result of having
10 to push his rollator ten miles. (Id. at 6.)

## III.

## DISCUSSION

Plaintiff alleges each Defendant violated 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"); California Civil Code § 43; California Civil Code § 51, California's Unruh Civil Rights Act ("the Unruh Act"); and California Civil Code § 1708. (Compl. 7-9.) Plaintiff also alleges there was a general conspiracy to murder him. (Compl. 15-16.)

### A. Eleventh Amendment Immunity and Requested Relief

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies and state officials in their official capacities," Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity," Yakama Indian Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999). See also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996). Further, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102 (1984) (emphasis added); Sato v. Orange Cty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017) (noting that "agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court."), cert. denied, 138 S. Ct. 459

(2017); Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 n. 28 (9th Cir. 2002) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies."). Eleventh Amendment immunity has not been abrogated with respect to claims brought under section 1983. Quern v. Jordan, 440 U.S. 332, 341–42 (1979); Alabama v. Pugh, 438 U.S. 781–82 (1978). However, "the Eleventh Amendment does not bar suits for money damages against state officials in their personal capacities []; nor does it bar suits against state officials in their official capacity for prospective (injunctive) relief." Reyes v. Valley State Prison, No. 1:20-CV-00023 ADA GSA (PC), 2022 WL 3691359, at *12 (E.D. Cal. Aug. 25, 2022), report and recommendation adopted, No. 1:20-CV-00023 ADA GSA (PC), 2022 WL 6231215 (E.D. Cal. Oct. 7, 2022).

Here, Plaintiff sues the CDCR; Macomber in both his official and individual capacities; and McVay in his individual capacity. Plaintiff seeks monetary damages from Macomber and McVay; declaratory relief from Macomber and CDCR; and injunctive relief against Macomber and CDCR. (Compl. 7-9.) Because the Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity, Plaintiff fails to state a claim for damages against Macomber in his official capacity. See Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016). However, Plaintiff is not barred from seeking monetary damages from Macomber and McVay in their individual capacities. The Court further notes that Plaintiff is not barred from bringing an ADA claim against CDCR. See Marta v. CDCR, No. 1:20-CV-00072-GSA-PC, 2021 WL 9772769, at *4 (E.D. Cal. July 15, 2021); see also Sims v. Bird, No. 23-CV-463 TWR (BLM), 2023 WL 3990054, at *7 (S.D. Cal. June 13, 2023 (noting the CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons") (citation and quotation omitted).

Further, the vague injunctive relief requested by Plaintiff—to the extent it is even prospective relief—appears moot and is subject to dismissal, given Plaintiff is no longer in custody. See Sample v. Johnson, 771 F.2d 1335, 1340 (9th Cir. 1985) (plaintiffs "must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief.") (citation omitted).

**B.     Section 1983**

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, Plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185.

To bring a claim under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Further, the complaint must allege that every defendant acted with the requisite state of mind to violate the underlying constitutional provision. OSU Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).

Plaintiff alleges Macomber failed to properly train and supervise McVay and fictitious defendants; McVay failed to properly train and supervise fictitious defendants; and CDCR "under *respondeat superior* is responsible and liable for the actions and inactions of" Macomber, McVay and fictitious defendants. (Compl. 7-9.) As an initial matter, Plaintiff fails to state the subject of the alleged failed training or supervision by Defendants. Further, there is no *respondeat superior* liability under section 1983; therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' " Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotations omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id. Here, Plaintiff fails to specifically allege any causal link between McVay or Macomber and any constitutional violation.

///

6

1. The ADA

Plaintiff must allege a violation of a right secured by the constitution or federal law to state a claim under section 1983. Plaintiff does not allege any Defendant violated a constitutional right. Neither does Plaintiff state what federal law supports his section 1983 claim. The Court notes the only alleged violation of federal law is that each Defendant violated the ADA. However, Plaintiff cannot allege a section 1983 claim predicated upon a violation of the ADA.

"An alleged violation of federal law may not be vindicated under § 1983 ... where ... 'Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme.' " Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002) (quoting Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995). "[A] comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." Vinson, 288 F.3d at 1155 (quoting Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)). The Ninth Circuit has found that the specificity and comprehensiveness of the ADA "suggest[s] that Congress intended the Title II remedial scheme to be the exclusive means by which a party could vindicate his Title II ADA rights, and that allowing the plaintiff to use the more general § 1983 remedial scheme instead would be contrary to Congress's intent." Okwu v. McKim, 682 F.3d 841, 844 (9th Cir. 2012) (citing Vinson, 288 F.3d at 1156).

Thus, "[s]ection 1983 is not a vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff must sue under the ADA directly." Hill v. Baca, No. 08-03834 CAS (AJW), 2010 WL 1727655, at *6 (C.D. Cal. Apr. 26, 2010). Accordingly, to the extent Plaintiff's section 1983 claim against each defendant is predicated upon a violation of the ADA, Plaintiff fails to state a cognizable legal theory.

2. Conspiracy

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). In other words, conclusory allegations of conspiracy are

not enough to support a section 1983 conspiracy claim. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam). A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). " 'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' " Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, Plaintiff has not established a constitutional violation. Instead, Plaintiff alleges the existence of an extensive conspiracy to murder him involving McVay, the former warden at VSP, and unnamed CDCR officials at CASATF. (Compl. 14.) Plaintiff's only non-conclusory allegations to support his claim of a murderous conspiracy are (1) visits by CDCR internal affairs investigators after Plaintiff was transferred to VSP in April 2022 and (2) that VSP officials allegedly requested that Madera Police ask Plaintiff to sleep on the street at night and not inside an entryway alcove following his release on April 12, 2023. (Id.) Plaintiff's allegations, simply put, rise to the level of the irrational and wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992). To the extent Plaintiff's section 1983 claim is based upon a conspiracy to murder, Plaintiff's complaint fails to state a cognizable legal theory for conspiracy under section 1983.

The Court finds Plaintiff fails to state a claim against any defendant for violation of section 1983. Should Plaintiff choose to amend his complaint to allege a deprivation of constitutional or federal rights, he must also allege how each named defendant deprived those rights. In other words, there can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.

**C.    The ADA**

The Court liberally construes Plaintiff's allegations that each Defendant violated 42 U.S.C. § 12101 to be a cause of action under the ADA against each Defendant, independent of his section

1983 claim. Specifically, the Court construes Plaintiff's complaint to be alleging violations under Title II of the ADA, 42 U.S.C. § 12132, which prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). In order to state a claim of disability discrimination under Title II, a plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)).

As an initial matter, Plaintiff may not pursue an ADA claim against Macomber and McVay in their individual capacities to vindicate rights created by Title II of the ADA. Vinson, 288 F.3d at 1156; see also Walsh v. Nev. Dep't of Hum. Res., 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); Williams v. California Dep't of Corr. & Rehab., No. 2:16-CV-01377 MCE CKD, 2017 WL 977766, at *5 (E.D. Cal. Mar. 14, 2017) (noting that "Plaintiffs may sue only a public entity like CDCR for violations of the ADA, not government officials in their individual capacities."); cf. Becker v. Oregon, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) (noting that while "[i]ndividual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself."). Accordingly, Plaintiff fails to state an ADA claim against Macomber and McVay in their individual capacities.

Plaintiff alleges he is disabled with disequilibrium and nerve damage. (Compl. 14.) Plaintiff also attaches institutional medical records that state he is disabled and needs a wheelchair lift to access transport vehicles. (Id. at 27.) For screening purposes, the Court finds Plaintiff adequately alleges he is an individual with a qualifying disability. However, Plaintiff's complaint does not clearly allege the remaining elements of a Title II ADA claim.

Plaintiff alleges McVay and fictitious defendants "provided NO 'Reasonable Accommodation' 'Transport Vehicle with Lift' on release…." (Id. at 12.) However, Plaintiff also alleges VSP CDCR personnel drove him from VSP to an Amtrak station in Madera. (Id.) It is unclear from Plaintiff's complaint whether the basis of his ADA claim stems from a failure by CDCR personnel to transport Plaintiff to the Amtrak station by a transport vehicle with a lift or if it is the fact that VSP personnel did not transport him from VSP to Orange County. As to the former, the complaint does not contain any factual allegation sufficient to plausibly suggest CDCR failed to make reasonable accommodations for Plaintiff's transport upon release, even assuming such post-release transportation qualifies as a "service[], program[], or activit[y]" by the CDCR that is subject to the ADA. As to the latter, Plaintiff provides no allegation that plausible suggests that transportation from VSP to Orange County is a service, program, or activity normally offered by CDCR and, critically, it was denied to him only because he is disabled. To the contrary, Plaintiff clearly alleges he was only transported to the Amtrak station because Defendants wanted to murder him.

The complaint fails to state a claim for discrimination under the ADA. However, Plaintiff will be given an opportunity to amend the complaint to allege facts showing how he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and that such exclusion, denial of benefits, or discrimination was because of his disability.

**D.    Supplemental Jurisdiction**

As stated above, the Court cannot find that Plaintiff has sufficiently pled violations under federal or constitutional law. As such, without a federal claim upon which to attach supplemental jurisdiction, the Court must decline supplemental jurisdiction over the state law claims. However, in the event Plaintiff can amend his complaint to sufficiently plead federal or constitutional violations, the Court shall briefly provide the relevant legal standards for the state law claims listed in the complaint.

    1.    California Civil Code § 43

California Civil Code § 43 provides that each person is entitled to the "right of protection

from bodily restraint or harm." Bianco v. Warner, Case No. 2:21-cv-03677 (C.D. Cal. Sept. 3, 2021). Section 43 thus "codifies causes of action for assault, battery, and invasion of privacy." Marsh v. San Diego Cty., 432 F. Supp. 2d 1035, 1057-58 (S.D. Cal. 2006). Plaintiff, however, does not plead the elements of battery, assault, or invasion of privacy. In other words, Plaintiff does not allege any of the named Defendants physically harmed him or threatened imminent harmful contact.[1] Accordingly, Plaintiff fails to state a cause of action under section 43.

### 2. The Unruh Act

Plaintiff alleges the Defendants violated the Unruh Act, which provides that "[a]ll persons within the jurisdiction of this State are free and equal" and irrespective of disability "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services *in all business establishments* of every kind whatsoever." Cal. Civ. Code § 51(b) (emphasis added). As previously discussed, it is unclear from Plaintiff's complaint what services were denied to him. However, Courts have previously held that jails and prisons are not business establishments and are therefore not subject to suit under the Unruh Act. See, e.g., Crisp v. Wasco State Prison, No. 1:13-CV-01899-SKO PC, 2015 WL 3486950, at *6 (E.D. Cal. June 2, 2015) (collecting cases). Accordingly, to the extent Plaintiff alleges an Unruh claim relating to jail or prison services, Plaintiff fails to state a claim under the Unruh Act.

To the extent Plaintiff can allege disability discrimination in a business establishment, a violation of the Unruh Act can be established by alleging a violation of the ADA. Cal. Civ. Code § 51(f). Alternatively, if no ADA violation is pled, an Unruh Act claim lies only upon a showing of intentional discrimination. Williams v. California Dep't of Corr. & Rehab., No. 2:16-CV-01377 MCE CKD, 2017 WL 977766, at *4 (E.D. Cal. Mar. 14, 2017) (citing Munson v. Del Taco, Inc., 46 Cal. 4th 661, 665 (2009)). However, as previously discussed, Plaintiff fails to plausibly allege a predicate ADA violation or any form of intentional discrimination on the part of Defendants.

///

---

[1] The Court recognizes Plaintiff alleges a conspiracy to murder him was "in the works" (Compl. 15); however, as previously stated, the Court finds such allegations implausible. Plaintiff does not otherwise allege any named Defendant either engaged in unlawful and harmful touching or had an unlawful intent to inflict immediate injury. Bolbol v. Feld Ent., Inc., No. C 11-5539, 2012 WL 5828608, at *7 (N.D. Cal. Nov. 15, 2012) (defining battery and assault under California law in the context of Cal. Civ. Code § 43).

3. California Civil Code § 1708

California Civil Code section 1708 provides that "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." Cal. Civ. Code § 1708. Section 1708 "states only a general principle of law" and does not "authorize[ ] a cause of action for damages." Ley v. State of California, 114 Cal. App. 4th 1297, 1306 (2004); see also Aldini AG v. Silvaco, Inc., No. 21-CV-06423-JST, 2023 WL 3749792, at *4 (N.D. Cal. Mar. 27, 2023) ("Section 1708 does not provide a cause of action"). Accordingly, Plaintiff fails to state a cognizable claim under section 1708.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state any cognizable claims for relief and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez, 203 F.3d at 1127. If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named Defendant did that led to the deprivation of Plaintiff's constitutional rights or violations of federal or state law. Iqbal, 556 U.S. at 678-79. Importantly, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level…" Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself, without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' ").

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;

3. The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and

4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to the district judge that the filing presented as a motion be denied, and that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:     **September 3, 2024**                                      
                                                          UNITED STATES MAGISTRATE JUDGE