1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE RICHARD SENATOR, | Case No.  1:24-cv-00439-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION |
| v. | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE |
| JEFF MACOMBER, et al., | |
| Defendants. | (ECF No. 9) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

On October 3, 2024, Bruce Richard Senator ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed a first amended complaint ("FAC") against (1) Jeff Macomber, secretary of corrections at California Department of Corrections and Rehabilitation ("CDCR"); (2) Matthew McVay, former warden at Valley State Prison ("VSP"); (3) Theresa Cisneros, warden at California Substance Abuse Treatment Facility and State Prison ("CASATF"); (4) David Lopez, correctional officer at CASATF; (5) Jason Davis, correctional officer at CASATF; (6) Ernest Rocha, correctional officer at CASATF; (7) Leonardo Parra, correctional officer at CASATF; (8) J. Singer, correctional officer at CASATF; (9) Daniel Hernandez, chief probation officer at Orange County Probation Department; and (10) Kathleen Green, supervising probation officer at Orange County Probation Department.  (ECF No. 9.)  The FAC is currently before the Court for screening.

1

# I.

## SCREENING REQUIREMENT

Because Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a case at any time if the Court determines the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) ("[W]here the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and … afford the petitioner the benefit of any doubt" (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)).).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability … 'stops short of the line between possibility and plausibility of entitlement to relief.' "  Id.  (quoting Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for the court to draw

2

the reasonable conclusion that the defendant is liable for the misconduct alleged.  Id.  Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

**II.**

**COMPLAINT ALLEGATIONS**

The Court accepts Plaintiff's allegations as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff summarily alleges he has "substantial physical disabilities." (FAC 15.)  Plaintiff attaches medical records from institutional encounters which state he has a disability related to mobility and that he needs a wheelchair lift to access transport vehicles.  (FAC 50, 63-64, 66-68.)

On June 24, 2021, while Plaintiff was incarcerated at CASATF, Defendants Lopez, Davis, Rocha, and Parra, while under supervision of Defendant Cisneros, engaged in a conspiracy to murder Plaintiff due to Plaintiff's efforts to assist another inmate in litigation and efforts to report threats made by Defendant Lopez.  (FAC 5, 10.)  On the date of incident, CASATF officials engaged one inmate to incite another inmate to murder Plaintiff.  (FAC 10.)  The attack resulted in injuries to Plaintiff.  (Id.)

From July 2021 through August 27, 2021, Defendants Davis, Rocha, and Singer, while under supervision of Defendant Cisneros, engaged in a conspiracy to incite inmates to murder Plaintiff to suppress Plaintiff's CDCR-602 grievances and efforts to bring in the CDCR Office of Internal Affairs regarding the June 24, 2021 murder attempt.  (Id.)

On November 15, 2022, in advance of Plaintiff's April 12, 2023 release from prison, CDCR Parole Services officials at VSP initiated a Release Program Study ("RPS") which was forwarded to Orange County Probation Department officials, including Defendants Hernandez and Green, along with copies of Plaintiff's CDCR medical documents.  (FAC 6.)  The RPS notates "Transport Precaution Code: 92" and "Physical Limitations: Transport Vehicle with Lift."  (Id.)  Plaintiff's medical documentation noted "Transport Vehicle with Lift" and that Plaintiff "[n]eeds a wheelchair lift to access transport vehicles."  (Id.)  Plaintiff alleges he also "filed with Defendant McVay" requests that included a CDCR-602 Grievance; a CDCR-1824 Reasonable Accommodation

Request; additional medical disability documents regarding a "Transport Vehicle with Lift"; and an "outline of injuries and conditions" to ensure CDCR provided a transport vehicle with a lift upon Plaintiff's release.  (FAC 6-7.)

On April 12, 2023, Plaintiff was released from CDCR custody.  (FAC 7.)  CDCR personnel drove Plaintiff to the Amtrak station located at 18770 Road 26 in Madera, California.  (Id.)  Plaintiff alleges McVay and other fictitious defendants withheld his California identification card; gave Plaintiff a debit card with $200 in release funds but placed a "block" on the card; and provided no "reasonable accommodation transport vehicle with lift" upon release.  (Id.)  Plaintiff alleges the Defendants did so because they planned to murder Plaintiff at the Amtrak station by a drive-by shooting.  (FAC 9.)  Plaintiff tied his personal property to his rollator with his shoelaces and walked for ten hours from the Amtrak Station to the City of Madera Police Department, located at 330 South C Street in Madera, California.  (FAC 8.)  At Plaintiff's request, Madera Police contacted Defendants Hernandez and Green; however, they would not provide assistance, transportation, or other relief.  (Id.)

From April 12, 2023 to April 19, 2023, Plaintiff camped out in the outer entrance alcove of the Madera Police Department.  (Id.)  Plaintiff alleges Defendant McVay and fictitious defendants specifically requested that the Madera Police tell Plaintiff they wanted Plaintiff to camp out on the street to allow CDCR officials to plan another murder drive-by shooting.  (FAC 9.)

Plaintiff seeks monetary compensation for his damages, including endangerment to his health, safety, and life.  (FAC 2, 8.)

**III.**

**DISCUSSION**

Plaintiff brings four causes of action for conspiracy to commit murder against McVay, Cisneros, Lopez, Davis, Rocha, Parra, and Singer, and two causes of action for violations of the Americans with Disabilities Act ("ADA") against McVay, Hernandez, and Green.[1]  The Court

---

[1] The Court notes that while Macomber is named as a defendant (FAC 2), the FAC fails to allege any factual allegations related to Macomber and Macomber is not named in any of the six causes of action.  The Court finds Plaintiff fails to state any claim against Macomber in the FAC. The Court provided Plaintiff an opportunity to amend his initial complaint to state a cognizable claim against Macomber.

liberally construes Plaintiff's first four causes of action as alleging a conspiracy under section 1983. The Court first addresses Plaintiff's section 1983 claims, then his claims under the ADA.

### A.    Section 1983

As stated in the prior screening order, 42 U.S.C. § 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim under section 1983, Plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185.

To bring a claim under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Further, the complaint must allege that every defendant acted with the requisite state of mind to violate the underlying constitutional provision. OSU Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012).

### 1.    The ADA

As previously explained, Plaintiff must allege a violation of a right secured by the constitution or federal law to state a claim under section 1983.  Plaintiff does not allege any Defendant violated a constitutional right.  Neither does Plaintiff state what federal law supports his section 1983 claim.  The Court notes the only alleged violation of federal law is that McVay, Hernandez, and Green violated the ADA.  (FAC 14-15.)

However, Plaintiff cannot allege a section 1983 claim predicated upon a violation of the ADA. "An alleged violation of federal law may not be vindicated under § 1983 ... where ... 'Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme.' "  Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002) (quoting Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995)). "[A] comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that

Congress intended to foreclose resort to more general remedial schemes to vindicate that right." Vinson, 288 F.3d at 1155 (quoting Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)).  The Ninth Circuit has found that the specificity and comprehensiveness of the ADA "suggest[s] that Congress intended the Title II remedial scheme to be the exclusive means by which a party could vindicate his Title II ADA rights, and that allowing the plaintiff to use the more general § 1983 remedial scheme instead would be contrary to Congress's intent."  Okwu v. McKim, 682 F.3d 841, 844 (9th Cir. 2012) (citing Vinson, 288 F.3d at 1156).  Thus, "[s]ection 1983 is not a vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff must sue under the ADA directly."  Hill v. Baca, No. 08-03834 CAS (AJW), 2010 WL 1727655, at *6 (C.D. Cal. Apr. 26, 2010).

Accordingly, to the extent Plaintiff's section 1983 claims are predicated upon a violation of the ADA, Plaintiff fails to state a cognizable legal theory.

## 2.   Conspiracy

The Court liberally construes Plaintiff's first through fourth causes of action as alleging a civil conspiracy pursuant to section 1983.

A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law."  Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist., No. 1:10-CV-00166-AWI, 2010 WL 3154013, at *8 (E.D. Cal. Aug. 6, 2010) (quoting Dixon v. City of Lawton, Okl., 898 F.2d 1443, 1449 n.6 (10th Cir. 1990)). Importantly, to "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient."  Id. (quoting Dixon, 898 F.2d at 1449 n.6).  The "essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." Id. (quoting Dixon, 898 F.3d at 1449 n.6).

A complaint alleging a conspiracy under section 1983 must "allege [some] facts to support the existence of a conspiracy among the defendants."  Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).  In other words, conclusory allegations of conspiracy are not enough to support a section 1983 conspiracy claim.  Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam). A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the

6

1   minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting

2   United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)

3   (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059,

4   1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126

5   (9th Cir. 1989)).

6        Here, Plaintiff alleges one extensive conspiracy to murder him by CDCR officials, separated

7   by four incidents spanning from June 2021 to April 19, 2023.  (FAC 9-13.)  However, Plaintiff fails

8   to allege a constitutional or federal right that Defendants conspired to violate.  See Dyess, 2010

9   WL 3154013, at *8 (to "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove

10  not only a conspiracy, but also a deprivation of rights….").  Plaintiff's allegations are insufficient

11  to plausibly establish that any defendant engaged in a conspiracy to deprive him of any particular

12  right secured by the Constitution or federal law.  Even construing the FAC liberally, Plaintiff fails

13  to state a claim upon which relief may be granted as to any conspiracy claim under section 1983

14  against Defendants Lopez, Davis, Rocha, Parra, Singer, and McVay.

15       As alleged, Plaintiff's allegations of a conspiracy are also conclusory.  See Perkins v.

16  Kemalyan, No. CV 09–7439, 2010 WL 6416247 at *5 (C.D. Aug. 6, 2010) ("Our jurisprudence

17  requires more than labels of a conspiracy; it requires factual content.").  Plaintiff alleges insufficient

18  facts to support the existence of an agreement or meeting of the minds to violate Plaintiff's

19  unspecified rights between Defendants Lopez, Davis, Rocha, Parra, and non-party inmates on June

20  24, 2021 (FAC 10); Defendants Davis, Rocha, and Singer from July through August 27, 2021  (FAC

21  11);  McVay and fictitious defendants when releasing Plaintiff from custody on April 12, 2023

22  without identification, funds, or transportation (FAC 12); or McVay and fictitious defendants when

23  requesting the Madera Police Department to instruct Plaintiff to camp on the street to effectuate a

24  plan to have Plaintiff murdered by a drive-by shooting at night from April 12-19, 2023 (FAC 13).

25       Further, Plaintiff alleges that at the time of the conclusory conspiracies alleged in his first

26  and second causes of action, "ultimate supervisorial liability rested with Defendant Theresa

27  Cisneros, Warden CASATF, who failed to properly train and supervisor [sic] her subordinates."

28  (FAC 10-11.)  There is no respondeat superior liability under section 1983; therefore, each

defendant is only liable for her own misconduct.  Iqbal, 556 U.S. at 677.  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' "  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotations omitted).  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  Id.  Here, Plaintiff fails to allege any specific policy that is a moving force of any constitutional violation or that there is any causal link between Cisneros and a constitutional violation.  Accordingly, Plaintiff fails to state a section 1983 claim against Cisneros under a theory of supervisory liability.

## B.    The ADA

Plaintiff's fifth and sixth causes of action allege that McVay, Green, and Hernandez violated the ADA after Plaintiff's release from CDCR custody.  The Court liberally construes the FAC to allege violations under Title II of the ADA, 42 U.S.C. § 12132, which prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  In order to state a claim of disability discrimination under Title II, a plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)).

Further, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant."  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely,

8

and a failure to act upon that likelihood." <u>Id.</u> at 1139.  The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." <u>Id.</u> at 1140.  When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.  <u>Id.</u> at 1139.

As an initial matter, Plaintiff states that he sues McVay, Green, and Hernandez in their individual capacities and that "[n]o officials, nor state agencies are sued in the official capacity." (FAC 2.)  However, as stated in a prior screening order, Plaintiff may not pursue an ADA claim against defendants in their individual capacities to vindicate rights created by Title II of the ADA. <u>Vinson</u>, 288 F.3d at 1156; <u>see also</u> <u>Walsh v. Nev. Dep't of Hum. Res.</u>, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); <u>Williams v. California Dep't of Corr. & Rehab.</u>, No. 2:16-CV-01377 MCE CKD, 2017 WL 977766, at *5 (E.D. Cal. Mar. 14, 2017) (noting that "Plaintiffs may sue only a public entity like CDCR for violations of the ADA, not government officials in their individual capacities"); <u>cf.</u> <u>Becker v. Oregon</u>, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) (noting that while "[i]ndividual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself.").  Here, Plaintiff sues neither a public entity responsible for the alleged discrimination nor any defendant in their official capacity.  Accordingly, Plaintiff's disability discrimination claims under the ADA against McVay, Green, and Hernandez in their individual capacities should be dismissed.

Even if Plaintiff had sued McVay in his official capacity as warden of VSP or Green and Hernandez in their official capacities as Orange County Probation Department officials, Plaintiff still fails to state a cognizable claim under the ADA.  Plaintiff must first allege that he is an individual with a disability.  While Plaintiff conclusorily alleges he has "substantial physical disabilities" (FAC 15), he fails to allege he has a qualifying disability under the ADA.  However,

Plaintiff attaches institutional medical records that state he is disabled and needs a wheelchair lift to access transport vehicles. (FAC 27.) By incorporating the attachments, the Court finds Plaintiff is an individual with a qualifying disability for screening purposes. However, the FAC does not sufficiently allege the remaining necessary elements of a Title II ADA claim.

Plaintiff's fifth claim alleges that McVay, knowing Plaintiff had substantial physical disabilities, denied Plaintiff's rights under the ADA by effecting Plaintiff's release with no identification, release funds, or "reasonable accommodation transportation." (FAC 14.) As stated in the initial screening order, the allegations do not clearly allege whether the basis of Plaintiff's claim stems from a failure to transport Plaintiff to the Amtrak station via an accessible transport vehicle or if it is the fact Plaintiff was not transported from VSP to Orange County. As to the former, the FAC does not contain any factual allegations that plausibly suggest that Plaintiff was transported to the Amtrak station by a vehicle without a wheelchair lift or other reasonable accommodation. As to the latter, Plaintiff provides no allegations that plausibly suggest that transportation from VSP to Orange County is a service, program, or activity normally offered by VSP. Further, Plaintiff proffers no factual material to suggest that he was excluded from such a service or denied benefits only because he is disabled. Rather, Plaintiff concurrently alleges that he was transported to the Amtrak station not for discriminatory purposes, but because Defendants intended to "commit murder by releasing Plaintiff with: NO identification[,] NO release funds[, and] NO 'Reasonable Accommodation' transportation" and that "Defendants acted in this manner, intentionally, as it was planned to have Plaintiff murdered by drive-by shooting while camped out on the street at night." (FAC 13.) Plaintiff therefore fails to allege a cognizable claim against McVay under the ADA, even if McVay was properly sued in his official capacity.

Plaintiff's sixth claim alleges that Hernandez and Green agreed on December 28, 2022 that Plaintiff was to be provided a transport vehicle with lift upon release from CDCR custody into Green and Hernandez's custody for probation. (FAC 15.) Plaintiff alleges that Hernandez and Green denied Plaintiff's rights under the ADA by effecting a release to their custody with "NO 'Reasonable Accommodation' transportation." (Id.) While Plaintiff was transported to the Amtrak station upon release from VSP, his identification was withheld, his debit card was "blocked," and

he was not provided "reasonable accommodation transportation" allegedly due to CSATF and McVay's conspiracy "to have Plaintiff murdered at the Amtrak station by a drive-by shooting." (FAC 9.)  Because Hernandez and Green were advised that Plaintiff was left at the Amtrak station and was stranded in front of the Madera Police Department but would not provide any " 'reasonable accommodation' transportation," Plaintiff alleges both violated the ADA by "fail[ing] to abide by their written consent December 28, 2022 [*sic*] to provide 'Transport Vehicle with Lift'…'Transport Precaution,' and… 'Transport Vehicle with Lift….'" (FAC 9, 15.)

Plaintiff fails to state a cognizable claim under the ADA against Defendants Hernandez and Green.  Even accepting as true Plaintiff's allegation that Hernandez and Green agreed Plaintiff was to be provided a transport vehicle with a wheelchair lift upon his release from custody,[2] the FAC does not allege any facts that show Plaintiff was denied a transport vehicle with a wheelchair lift upon his release, nevertheless that such denial was due to his disability.  Instead, Plaintiff alleges that Hernandez and Green violated the ADA for failing to provide transportation upon being advised that Plaintiff left the Amtrak station and walked to the Madera Police Department.  Plaintiff fails to allege facts that support that such transportation assistance was a service provided by the Orange County Probation Department and the reason it was denied to Plaintiff was because he was disabled.  Because Plaintiff fails to allege that he was excluded from participation in, or denied the benefits of, any service or programs offered by Green and Hernandez because of his disability, or that he was subjected to any type of discrimination by reason of his disability, Plaintiff fails to state a claim under the ADA against Hernandez and Green, even if they were properly sued in their official capacities.

### C.    Supplemental Jurisdiction

The Court notes the caption and footer of the FAC state that Plaintiff also brings claims "for violation of Civil Rights 42 U.S.C. § 1983 and § 12101, with state pendant claims per California Civil Code §§ 43, 51, and 1708."[3]   (See FAC generally.)  However, the FAC fails to allege any

---

[2] Plaintiff references a CDCR form document signed by Green on December 28, 2022 (FAC 57-60), which indicates Plaintiff's Disability Placement Program (FAC 59, 66) and lists Plaintiff's medical concerns and disabilities, including a notation of "Physical Limitations: Transport Vehicle with Lift."  (FAC 60.)

[3] Plaintiff alleged claims against Macomber, CDCR, and McVay under California Civil Code § 43; California Civil

causes of action under state law.  Even if Plaintiff did allege claims under state law, a district court may decline to exercise supplemental jurisdiction over such claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction...."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted).  Having found Plaintiff fails to state any claim under federal law, the Court declines to exercise its supplemental jurisdiction of any claims under state law that Plaintiff may also be attempting to assert in the FAC.

### D.      Leave to Amend

Leave to amend generally shall be denied only if amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith.  Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 532 (9th Cir. 2008). "These factors, however, are not given equal weight.  Futility of amendment can, by itself, justify the denial of ... leave to amend."  U.S. ex rel. Insoon Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation omitted).

It appears to the Court that further amendment of this case would be futile because the deficiencies have not been cured despite being given prior leave to amend.  The Court has previously provided Plaintiff the relevant legal standards to support claims under section 1983, the ADA, and various state laws.  In particular, the Court noted in a prior screening order that Plaintiff's section 1983 claims failed to state a deprivation of a constitutional or federal right; that Plaintiff could not pursue an ADA claim against government officials in their individual capacities; and that a cognizable ADA claim requires factual allegations that show that Plaintiff was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and that such exclusion, denial of benefits, or

---

Code § 51; and California Civil Code § 1708 in his initial complaint.  The Court found Plaintiff failed to state a cognizable claim under state law but provided the relevant legal standards for each claim in a prior screening order. (See ECF No. 7 at 10-12.)

discrimination was because of his disability.  The Court provided Plaintiff leave to amend to cure the deficiencies.  However, the FAC re-alleges section 1983 conspiracy and ADA claims that contain the same deficiencies as Plaintiff's initial complaint.  The Court therefore finds further amendment would be futile and recommends that the action be dismissed without leave to amend.

**IV.**

**ORDER AND RECOMMENDATION**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that this action be DISMISSED without leave to amend for failure to state a claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to these findings and recommendations with the Court limited to 15 pages in length, including any exhibits.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 29, 2024**

_____
UNITED STATES MAGISTRATE JUDGE